IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2016 APR 15 P 4: 19

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

RONALD BERT SMITH,

Plaintiff,

vs.

JEFFERSON DUNN, Commissioner, Alabama Department of Corrections, in his official capacity,

CARTER DAVENPORT, Warden, Holman Correctional Facility, in his official capacity,

OTHER UNKNOWN EMPLOYEES AND AGENTS OF THE ALABAMA DEPARTMENT OF CORRECTIONS, in their official capacities,

Defendants.

CIVIL ACTION NO. 2:16-cv-0269-WKW

DEATH PENALTY CASE
NO EXECUTION DATE SET[1]

# COMPLAINT

1. Plaintiff, Ronald Bert Smith, is a death row inmate in Alabama. He brings this action pursuant to 42 U.S.C. § 1983, alleging that Defendants will violate his right to be free of cruel and unusual punishment under the Eighth Amendment to the United

[1] The State of Alabama has filed a motion seeking an execution date, which is pending in the Alabama Supreme Court.

States Constitution by using an execution protocol that will subject him to a torturous level of pain.

2. Defendants' execution protocol uses potassium chloride, a drug that unquestionably causes an unconstitutional level of pain if the condemned inmate is not adequately anesthetized. Defendants do not intend to anesthetize Plaintiff; rather, they intend to use a sedative with no analgesic properties to create the illusion of adequate anesthesia. Defendants' protocol further creates an illusion of adequate anesthesia by having an untrained corrections officer conduct a "consciousness assessment" to determine whether an inmate is anesthetized prior to injection of potassium chloride, a drug that, if injected without adequate anesthesia, indisputably causes an unconstitutional level of pain.

3. Plaintiff does not know the details of the protocol beyond what drugs will be used, and how Defendants will determine whether he is insensate. The protocol can be changed at any moment at Defendants' whim.[2] Defendants' protocol, as it is presently devised, creates a "substantial risk of serious harm"[3] and violates Plaintiff's right not to

---

[2] As a result, using the term "protocol" to describe Alabama's lethal injection scheme is a misnomer. Merriam-Webster's Dictionary defines protocol in this context as "a detailed plan of a scientific or medical experiment, treatment, or procedure." It is axiomatic that a procedure subject to change at any time is, in fact, not a detailed plan, but a mere non-binding suggestion, which, being non-scientific, is likely to lead to unexpected results, as shown by events in Arizona and Oklahoma. Further, even though Corrections Departments claim that the protocol is binding, they do not always even use the drugs that are required by the protocol. *See* Matt Ford, *An Oklahoma Execution Done Wrong*, The Atlantic, Oct. 8, 2015, http://www.theatlantic.com/politics/archive/2015/10/an-oklahoma-execution-done-wrong/409762/. For ease of reference, this pleading will continue to use "protocol" without conceding that Alabama's scheme for lethal injection actually constitutes a protocol.

[3] *Baze v. Rees*, 553 U.S. 35, 50 (2008).

suffer cruel and unusual punishment as guaranteed by the Eighth Amendment to the United States Constitution.

## I. Jurisdiction and Venue

4. Jurisdiction over this matter arises under 42 U.S.C. § 1983, 28 U.S.C. §§ 1331 and 1343(a)(3), and 28 U.S.C. §§ 2201 and 2202.

5. Venue is appropriate in the Middle District of Alabama under 28 U.S.C. § 1391(b).

## II. Parties

6. Plaintiff is a United States citizen and a resident of the State of Alabama. He is a death-sentenced inmate under Defendants' supervision.

7. Defendant Jefferson Dunn is the Commissioner of the Alabama Department of Corrections ("ADOC").

8. Defendant Carter Davenport is the Warden of Holman Correctional Facility in Atmore, Alabama, where Plaintiff is incarcerated and where Alabama conducts its executions. Defendant Davenport is also, by statute, Plaintiff's executioner, unless he designates someone else to perform that duty.[4]

9. Unknown employees and agents of the ADOC are involved in the development and carrying out of executions in Alabama. Plaintiff does not know and cannot reasonably ascertain the identities or qualifications of these persons because the

[4] Ala. Code § 15-18-82(c).

ADOC refuses to make their names, positions or qualifications available to him. Because of Defendants' secrecy surrounding every aspect of their execution procedures, Plaintiff is unaware of the identity or training of any of the individuals who are or may be involved in carrying out executions.

10. All defendants are being sued in their official capacities. The named defendants are citizens of the United States and Alabama.

## III. Case or Controversy

11. There is a real and justiciable case or controversy between the parties.

12. Defendants and the ADOC have adopted a written and confidential execution protocol for administering capital punishment by lethal injection.

13. Defendants' execution protocol uses midazolam as the anesthetic agent necessary to render the protocol constitutional. The protocol then requires an injection of rocuronium bromide, followed by an injection of potassium chloride. Plaintiff is unaware if Defendants possess any of the drugs listed above or if they do, when those drugs expire.

14. Plaintiff challenges the constitutionality of Defendants' lethal injection procedures under 42 U.S.C. § 1983. This lawsuit does not challenge the fact of Plaintiff's conviction or of his death sentence or the constitutionality of Alabama's statute requiring execution by lethal injection.

15. No administrative grievance process is available at Holman Correctional Facility for Plaintiff or other death row inmates to challenge the procedures to be

employed during their execution.[7]

16. Absent judicial intervention, Plaintiff will be executed pursuant to an execution protocol that violates his rights under the Eighth Amendment to the United States Constitution. There is a justiciable case or controversy between the parties regarding the unconstitutionality of the execution protocol, particularly the unnecessary risk of pain and suffering inherent in the protocol.

## IV. Procedural Background

17. Plaintiff was convicted of capital murder and, pursuant to a judicial override of the jury's life sentence recommendation, sentenced to death in 1995.[5]

18. Plaintiff's conviction and sentence were affirmed by the Alabama Court of Criminal Appeals and the Alabama Supreme Court, and the United States Supreme Court denied certiorari.[6]

19. Plaintiff filed a Rule 32 petition collaterally attacking his conviction, which the circuit court denied in its entirety.[7]

20. The Alabama Court of Criminal Appeals affirmed the denial of relief, and the Alabama Supreme Court denied certiorari in 2005.[8]

---

[5] *Smith v. State*, 756 So.2d 892 (Ala. Crim. App. 1998).

[6] *Id.*; *Ex parte Smith*, 756 So.2d 957 (Ala. 2000); *Smith v. Alabama*, 531 U.S. 830 (2000).

[7] *Smith v. Comm'r, Ala. Dept. of Corr.*, 703 F.3d 1266 (11th Cir. 2012).

[8] *Id.*

21. Plaintiff filed a habeas corpus petition under 28 U.S.C. § 2254 in 2004, which was dismissed as untimely.[9] The Eleventh Circuit affirmed the denial in 2012,[10] and the United States Supreme Court denied certiorari in 2013.[11]

## V. Alabama's Lethal Injection Protocol

22. Lethal injection is Alabama's default method of execution.[12]

23. From April 26, 2011 until September 10, 2014, a lethal injection consisted of successive injections of pentobarbital, pancuronium bromide and potassium chloride.

24. On September 11, 2014, the State filed motions asking the Alabama Supreme Court to set execution dates for nine death-sentenced inmates.[13] In that pleading, the State disclosed that the day before it had filed the motion, Defendants changed two of the three drugs in the execution protocol.[14]

25. The State informed the Alabama Supreme Court for the first time that Alabama's lethal injection protocol would now use midazolam, rocuronium bromide, and potassium chloride as the three-drug sequence.

26. The first drug in the new protocol, midazolam, is a benzodiazepine, not a

---

[9] *Id.*

[10] *Id.*

[11] *Smith v. Thomas*, 134 S.Ct. 513 (2013).

[12] Ala. Code § 15-18-82.1(a).

[13] Plaintiff was not among those for whom execution dates were sought.

[14] Ex. A.

barbiturate like pentobarbital. Under the new protocol, it is to be given in a 500 mg bolus and, according to the State's Motion to Set Execution Date, "is meant to serve as an anesthetic."[15] Midazolam is not designed for use as the sole drug in anesthesia, but as an anesthetic adjunct.[16]

27. The second drug, rocuronium bromide, is a neuromuscular blocker (paralytic).[17]

28. The final drug, potassium chloride, disrupts the normal electrical activity of the heart and induces cardiac arrest by stopping the heart from pumping blood. Potassium chloride traveling in the bloodstream from the site of injection towards the heart causes an extreme burning sensation as it moves through the body destroying the internal organs.

29. In the event of incomplete anesthetic depth, the injection of potassium chloride will cause excruciating pain.[18] The inmate must be in a deep level of anesthesia

---

[15] Ex. A at 2.

[16] National Library of Medicine (National Institute of Health), Midazolam (By injection), Mar. 1, 2016, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011217/?report=details.

[17] Zemuron (rocuronium bromide) Prescribing Information, Jan. 2015, http://www.accessdata.fda.gov/drugsatfda_docs/label/2015/020214s036lbl.pdf. The FDA-approved label warns that because rocuronium bromide "has no known effect on consciousness, pain threshold, or cerebration," it "must be accompanied by adequate anesthesia or sedation." *Id.* at 6.

[18] *Baze v. Rees*, 553 U.S. 35, 53 (2008)("It is uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride.").

before being administered potassium chloride to ensure that he does not experience horrific pain.[19]

**A. Defendants' use of midazolam as the sole anesthetic creates a substantial risk that an inmate will experience an unconstitutional level of pain from the injection of rocuronium bromide and potassium chloride.**

30. The proper functioning of the first drug in a three-drug execution protocol is crucial to ensuring that Alabama's execution procedures do not subject an inmate to an "objectively intolerable risk of harm."[20] In *Baze*, petitioners conceded that if Kentucky's protocol (sodium thiopental, then pancuronium bromide, then potassium chloride) was followed precisely, it would result in a humane execution because the proper injection of sodium thiopental "eliminates any meaningful risk that a prisoner would experience pain from the subsequent injections of pancuronium and potassium chloride."[21]

31. Midazolam will not anesthetize Plaintiff, and regardless of the dose, will not eliminate the risk that he will experience pain from the paralytic or potassium chloride.

32. Midazolam is a member of the benzodiazepine family. Benzodiazepines are used to treat anxiety. While midazolam is often used as a sedative prior to inducing anesthesia with a second drug, it is not used clinically as a sole anesthetic. There is a

[19] *Id.*

[20] *Baze*, 553 U.S. at 50.

[21] *Id.* at 49.

high likelihood that midazolam will fail to reliably facilitate the sustained anesthetic state necessary to prevent an inmate from feeling the intolerable pain associated with the second and third drugs in Alabama's protocol.

33. Because of the way midazolam works in the human body, it could sedate an individual to the point where he was incapable of communicating that he was in pain while doing nothing to suppress the experience of pain. Because midazolam is a sedative and not an analgesic, there is a high likelihood that an inmate who receives a high dose of midazolam would be unable to respond to the noxious stimuli that constitute the ADOC's consciousness check, but would still feel the excruciating effects of the second and third drugs.[22]

34. Approximately 2% of people experience a "paradoxical effect" when administered midazolam. Rather than experiencing sedation, such persons become agitated. Increased dosages of midazolam will not suppress this paradoxical effect and may increase it. Defendants have no plan for dealing with an inmate who reacts paradoxically to midazolam during an execution.

**B. Observations from a witness to the execution of Christopher Brooks indicate that midazolam does not work as a sole anesthetic, and Defendants' consciousness assessment is insufficient to assess anesthetic depth.**

[22] Ex. B.

35. On January 21, 2016, Defendants executed Christopher Brooks by lethal injection.

36. Defendants used midazolam, rocuronium bromide, and potassium chloride to execute Mr. Brooks.

37. Terri Deep, a witness to Mr. Brooks' execution, described seeing the following:

a. Warden Davenport called for order and read the execution warrant.

b. Mr. Brooks made his final statement.

c. Warden Davenport then left the execution chamber, leaving D.F. and the prison chaplain in the execution chamber.

d. The chaplain walked over to Mr. Brooks, held his hand, and stepped away.

e. Mr. Brooks' breathing became rapid and shallow.

f. D.F. called out Mr. Brooks' name, raised his eyelids and reached behind Mr. Brooks' left arm momentarily.

g. Mr. Brooks' eyes were closed at the end of this activity.

h. D.F. stepped away from Mr. Brooks.

i. Mr. Brooks' breathing further slowed.

j. Before the curtains were closed, Mr. Brooks' left eye opened, and was still open when the execution chamber curtains were closed.

k. The witnesses in the observation room were removed after the curtains were closed, approximately 10 minutes before Mr. Brooks was pronounced dead.

38. Ms. Deep saw Mr. Brooks' left eye open during the execution, *after* the consciousness test was performed.[23]

39. No official from the ADOC took action when Mr. Brooks' eye opened.

40. If the paralytic was injected properly and performed its function, Mr. Brooks would not have been able to open his eye.

41. This indicates that Mr. Brooks was not insensate at the time he was injected with rocuronium bromide and potassium chloride.

42. In light of the foregoing, there is an objectively intolerable risk that Plaintiff will not be adequately anesthetized before the second and third drugs have been administered, causing him to experience intolerable pain and suffering.

## FIRST CAUSE OF ACTION

**Alabama's method of execution violates Plaintiff's right to be free from cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution, because midazolam will not sufficiently anesthetize him such that he will not feel the painful effects of potassium chloride.**

43. Plaintiff repeats and reasserts paragraphs 1 through 42 as though fully set forth herein.

44. The Eighth Amendment to the United States Constitution guarantees every

[23] Ex. C.

person the right to be free from cruel and unusual punishment. A method of execution causes cruel and unusual punishment if it creates a "substantial risk of serious harm."[24] Although it is possible to conduct executions in a constitutionally compliant manner, Defendants have chosen not to do so.

45. Defendants are acting under color of Alabama law in undertaking to execute Plaintiff by lethal injection through (i) the use of an insufficient procedure for inducing and maintaining loss of sensation prior to execution, and (ii) the use of a chemical that causes severe pain in the process of causing death, in conjunction with a chemical used specifically and for no other purpose than to mask that severe pain. This creates a substantial risk that Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment will be violated.

46. The Eighth Amendment requires that state conduct surrounding capital punishment not be arbitrary and capricious,[25] and that such conduct comports with "evolving standards of decency that mark the progress of a maturing society."[26]

47. Using midazolam in conjunction with a paralytic and potassium chloride violates *Baze*, *Furman*, and any evolving standards of decency. As detailed above, midazolam does not act reliably as an anesthetic such that potassium chloride can be

---

[24] *Baze*, 553 U.S. at 55.

[25] *Furman v. Georgia*, 408 U.S. 238, 255 (1972).

[26] *Atkins v. Virginia*, 536 U.S. 304, 311 (2002).

used as the mechanism of death.

**Alternative methods of execution that significantly reduce the risk of an unconstitutional level of pain are available to Defendants.**[27]

48. The State's continued use of a three-drug protocol that can cause an unconstitutional level of pain is unjustified in light of the fact that there are ready and available alternatives which would significantly reduce the substantial risk of severe pain.

49. Before 2009, most states employed a 3-drug lethal injection protocol. Since then, fourteen states[28] have adopted, or announced plans to adopt, a single-drug protocol, and eight of the fourteen have used the new single-drug protocol in executions.[29]

50. A report issued by a bipartisan committee recommended that states discontinue using three-drug lethal injection cocktails and instead use a single large

---

[27] Plaintiff understands that, in order to maintain his challenge to Alabama's method of execution, he is required by the Supreme Court's opinion in *Glossip v. Gross* to "identify a known and available alternative method of execution that entails a lesser risk of pain." *Glossip v. Gross*, 135 S. Ct. 2726, 2731 (2015). While complying with that opinion, Plaintiff objects to being required to accept this suicide burden in order to challenge a method of execution that is unconstitutional. In doing so, Plaintiff does not waive any future claims that his rights could be violated by maladministration of the proposed alternatives. He is merely pleading, as the plaintiffs did in *Baze*, that if these alternatives work properly and are administered properly (and in the case of the third option, work the way Defendants' expert has said it will), such an execution will not create a substantial risk of an unconstitutional level of pain.

[28] Death Penalty Info. Ctr., *State by State Lethal Injection*, http://www.deathpenaltyinfo.org/state-lethal-injection (last visited Apr. 14, 2016). The fourteen states are Arizona, Arkansas, California, Georgia, Idaho, Kentucky, Louisiana, Missouri, North Carolina, Ohio, South Dakota, Tennessee, Texas, and Washington. *Id.*

[29] *Id.* (naming the eight states as Arizona, Georgia, Idaho, Missouri, Ohio, South Dakota, Texas, and Washington).

dosage of a barbiturate.[30] The report found that "[t]he lethal injection systems most states implement create a high risk of improper administration of anesthesia" because execution team members typically are not medically trained personnel and administering the three drugs creates greater opportunity for error, with more calamitous results because of the excruciating effects of the second and third drugs.[31] The committee concluded that "a one-drug method would decrease the problems associated with drug administration and eliminate the risk from using paralyzing or painful chemical agents."[32]

**Alternative #1 - Pentobarbital**

51. Since January 1, 2014, over 40 executions have been carried out using a single bolus of pentobarbital, making it the most common method of execution in the United States. This method of execution is ready, available, and would entirely reduce the risk of pain associated with administering the paralytic and potassium chloride, because those drugs would not be used. There is no justification for Defendants to persist in using drugs that admittedly cause an unconstitutional level of pain when this alternative is available.

---

[30] Death Penalty Committee, The Constitution Project, *Irreversible Error: Recommended Reforms for Preventing and Correcting Errors in the Administration of Capital Punishment* 140 (2014), available at: http://www.constitutionproject.org/wp-content/uploads/2014/06/Irreversible-Error_FINAL.pdf.

[31] *Id.* at 139.

[32] *Id.* at 140.

52. States including Texas, Colorado, Ohio, Georgia, Missouri, Mississippi, Oklahoma, South Dakota, and Pennsylvania have used or intend to use compounded pentobarbital for executions.[33]

53. Since Christopher Brooks was executed by the State of Alabama, the State of Georgia has executed four inmates using compounded pentobarbital: Brandon Astor Jones, on February 3, 2016,[34] Travis Clinton Hittson, on February 17, 2016,[35] Joshua Daniel Bishop, on March 31, 2016,[36] and Kenneth E. Fults, on April 12, 2016.[37]

---

[33] *See* Michael Graczyk, *Texas Reveals Execution Drug's Origin*, The Beaumont Enterprise, Oct. 2, 2013, http://www.beaumontenterprise.com/news/article/Texas-revealsexecution-drug-s-origin-4862948.php; Dan Elliott, *ACLU: Colo has Added Alternate Drug for Executions*, The Denver Post (Aug. 23, 2013), http://www.denverpost.com/news/ci_23928875/aclu-state-adds-alternate-drug-executions; Julie Carr Smyth, *Ohio Clears Specialty Drug-Makers in Executions*, WOSU.org (Oct. 4, 2013), http://wosu.org/2012/news/2013/10/04/ohio-clears-specialty-drug-makers-in-executions/; Greg Bluestein, *Georgia Prepares to Execute Inmate with New Drug*, Athens Banner-Herald, June 23, 2011, http://onlineathens.com/stories/062311/bre_848081384.shtml; Jim Salter, *Missouri Switches to New Execution Drug*, Southeast Missourian (Oct. 22, 2013) http://www.semissourian.com/story/2016308.html; WJTV Staff, *Mississippi Death Row Inmates Say Lethal Injection Drugs Unconstitutional*, WJTV.com, Mar. 27, 2014, http://www.wjtv.com/story/25093667/mississippi-death-row-inmates-say-lethal-injection-drugsunconstitutional; Bailey Elise McBride, *Oklahoma Judge Strikes Execution Law Over Privacy*, Associated Press (Mar. 26, 2014), http://bigstory.ap.org/article/oklahoma-judge-tosses-stateexecution-law; *South Dakota Executes Inmate Who Killed Prison Guard*, USA Today (Oct. 16, 2012), http://www.usatoday.com/story/news/nation/2012/10/15/sd-death-row-inmate-to-beexecuted-monday/1635505/; Ed Pilkington, *Pennsylvania Challenged Over Execution* Drugs Secrecy in Federal Court, The Guardian (Sept. 11, 2014), http://www.theguardian.com/world/2014/sep/11/aclu-challenges-pennsylvania-lethal-injection-secrecy.

[34] Press Release, Ga. Dep't of Corr., Jones Execution Media Advisory (Feb. 3, 2016), *available at* http://www.dcor.state.ga.us/NewsRoom/PressReleases/PR_160203.html.

[35] Press Advisory, Attorney Gen. of Ga., Travis Clinton Hittson Executed This Evening for the 1992 Murder of Conway Utterbeck (Feb. 17, 2016), *available at* http://law.ga.gov/press-releases/2016-02-17/travis-clinton-hittson-executed-evening-1992-murder-conway-utterbeck.

[36] Press Release, Ga. Dep't of Corr., Bishop Execution Media Advisory (Mar. 31, 2016), *available at* http://www.dcor.state.ga.us/NewsRoom/PressReleases/PR_160331.html.

[37] Press Release, Ga. Dep't of Corr., Fults Execution Media Advisory (Apr. 12, 2016), *available at*

54. When asked, in a deposition taken in the Midazolam Litigation,[38] whether it would be difficult to locate a compounding pharmacist who would be willing to provide the ADOC with pentobarbital for use in executions, the ADOC's expert, Dr. Daniel Buffington, Pharm.D., stated that he believed it to be "a resolvable question."[39]

55. Dr. Buffington stated that he has training and experience in compounding drugs and that "[e]very pharmacist does."[40]

56. Dr. Buffington has compounded pentobarbital in the past by reconstituting it from its powder form, and could produce it from raw ingredients without the powder because "[i]t's not a difficult recipe."[41]

57. As of the date of his deposition, March 17, 2016, no one working for the Alabama Attorney General or the ADOC had ever asked Dr. Buffington to compound pentobarbital for use in executions or to locate compounding pharmacists who would be willing to do so.[42]

---

http://www.dcor.state.ga.us/NewsRoom/PressReleases/PR_160412.html.

[38] *See Carey Dale Grayson, et al. v. Jefferson S. Dunn, et al.*, Case No. 2:12-CV-0316-WKW (M.D. Ala.).

[39] Ex. E at 98 (describing the issue of the ADOC obtaining pentobarbital for use in executions from a compounding pharmacist as "A resolvable question. Level of difficulty, how many calls it would take, where that particular practice may reside. I know that they're there.").

[40] Ex. D at 93.

[41] *Id.* at 94-95.

[42] *Id.* at 95-96.

58. Although he did not state that he was unwilling to compound pentobarbital for the ADOC for use in executions, Dr. Buffington explained that he could "identify numerous other individuals who would be probably more readily capable based on equipment and site and instrumentation to do that, but I know that there are multiple facilities that can do that."[43]

59. Dr. Buffington further explained that he knows pharmacists who have expressed their willingness to provide compounded pentobarbital for use in executions and, with their permission, would provide their names to the ADOC and the Attorney General's office.[44]

**Alternative #2 – Sodium Thiopental**

60. Another viable option is a single-drug protocol using sodium thiopental. Sodium thiopental is known, as it was the primary drug used in three-drug protocols for over a decade, in a dosage that experts stated would cause death without need of a paralytic or potassium chloride.

61. As for availability, the Nebraska Department of Corrections claims that it can obtain sodium thiopental to use in its protocol, and do so legally.[45] The State of Ohio,

---

[43] *Id.* at 96, 99.

[44] *Id.* at 101-02.

[45] Paul Hammel & Martha Stoddard, *Nebraska has purchased drugs necessary for lethal injections, Gov. Ricketts says*, Omaha World-Herald, May 14, 2015, http://www.omaha.com/news/crime/nebraska-has-purchased-drugs-necessary-for-lethal-injections-gov-ricketts/article_3423d60a-fa8c-11e4-a761-1f25f74fc5ba.html.

as recently as October 2015, has also indicated to the Food and Drug Administration that it believes there are legal ways to import sodium thiopental for use in executions.[46] The State of Texas announced that it has received Drug Enforcement Administration approval to import sodium thiopental.[47] In addition, the patent on sodium thiopental has expired.[48]

62. Furthermore, in his deposition, Dr. Buffington stated that it would not be difficult to compound sodium pentobarbital and, given the right facilities, he could do it himself.[49]

63. Plaintiff is unaware of any efforts Alabama has made to obtain or produce sodium thiopental.

**Alternative #3 - Midazolam**

64. The third viable alternative is a one-drug protocol consisting of a large initial dose of midazolam, followed by a continuous infusion.

---

[46] Ex. E.

[47] Astrid Galvan, *Documents: Arizona tried to illegally import execution drug*, Miami Herald, Oct. 22, 2015, http://www.miamiherald.com/news/nation-world/national/article41143878.html ("Texas said it had obtained a license from the U.S. Drug Enforcement Administration to import sodium thiopental.").

[48] Thiobarbituric Acid Derivatives, U.S. Patent Office, Patent No. 2,153,729 (Apr. 11, 1939). When a patent has expired, "the public need not fear an infringement suit any more than it if were never patented." *Pequignot v. Solo Cup Co.*, 608 F.3d 1356, 1361 (Fed. Cir. 2010).

[49] Ex. D at 107-08.

65. A District Court in Oklahoma has found, based on the testimony of Dr. Evans, that a 500 mg dose of midazolam will likely cause death in under an hour.[50]

66. Plaintiff's expert, Dr. Tackett, believes that a 500 mg bolus of midazolam, followed by a continuous infusion, would eventually suppress the inmate's breathing, resulting in death.[51]

67. Given the Defendants' modification of their protocol to include midazolam and the recent execution of Christopher Brooks using the new protocol, Plaintiff assumes that the drug is available to Defendants.

68. Plaintiff has provided three alternative methods of execution that are feasible, available, and will significantly reduce the substantial risk of pain likely to occur under the current protocol. Therefore, Alabama's present protocol, on its face, violates Plaintiff's right to be free of cruel and unusual punishment because it creates a substantial risk of serious harm by using a drug that is not a suitable anesthetic before using drugs that mask and cause excruciating pain.

## SECOND CAUSE OF ACTION

**Defendants do not have an adequate method to ensure that Plaintiff is properly anesthetized prior to injection with rocuronium bromide and potassium chloride, creating a substantial risk of torturous pain.**

69. Plaintiff repeats and reasserts paragraphs 1 to 68.

---

[50] *Glossip*, 135 S. Ct. at 2742 n.4.

[51] Ex. F.

70. Defendants administer a "consciousness assessment" to a condemned inmate prior to the injection of rocuronium bromide and potassium chloride.

71. This assessment is performed by a corrections officer who has received no medical training.

72. Anesthesiologists receive extensive training in order to assess and monitor a patient's depth of anesthesia. Not only must they graduate from college and medical school, they must follow this with four years of training before they can be certified to practice anesthesiology without supervision.

73. Further, anesthesiologists do not take such action based solely on a manual assessment, they also rely on the use of devices that monitor vital signs.

74. The events of Christopher Brooks' execution indicate that Defendants' crude assessment conducted by an individual with no medical training creates a substantial risk of pain in violation of the Eighth Amendment.

75. Mr. Brooks' left eye opened after the consciousness assessment and, assuming they even noticed, no one from the ADOC took any action.

76. The fact that Mr. Brooks' eye opened indicates that he was feeling sensation contemporaneous with, or prior to, injection of the paralytic. Therefore, he was sensate at the time he was executed by injection of potassium chloride.

77. Defendants' inadequate procedures for assessing anesthetic depth violate the Eighth Amendment.

## THIRD CAUSE OF ACTION

**Defendants' policy of refusing a condemned inmate's legal team witnessing his or her execution access to a cellular phone or land line during the execution constitutes a denial of access to the courts in violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution**

78. During Christopher Brooks' execution, members of Mr. Brooks' legal team who witnessed his execution were denied access to a cellular phone and land line pursuant to an ADOC policy.[52]

79. Enforcement of the ADOC's policy against members of a condemned inmate's legal team who are witnesses to his or her execution will leave the legal team unable to contact the courts and seek intervention if something arises during an execution that warrants seeking a stay or other appropriate relief.[53]

80. Over the past 75 years, the Supreme Court has repeatedly found that prisoners have a constitutional right to access the courts.[54] The federal judiciary has the authority to strike down restrictions "to insure that inmate access to the courts is adequate, effective, and meaningful."[55] The right applies to an inmate in pursuit of a federal civil rights action.[56]

---

[52] Ex. G

[53] Although all possible bases for seeking judicial relief during an execution by lethal injection are unknown, one such possibility is an inmate who experiences a paradoxical reaction to midazolam.

[54] *See Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts.") (citing *Ex parte Hull*, 312 U.S. 546 (1941)).

[55] *Id.* (citations omitted).

[56] *Wolff v. McDonnell*, 418 U.S. 539, 579-80 (1974) ("The recognition by this Court that prisoners have certain constitutional rights which can be protected by civil rights actions would be diluted if inmates

81. Although neither *Bounds* nor *Hull* provides the constitutional source for a right of access the courts, the Supreme Court has identified the source as the First Amendment.[57] The source of Mr. Brooks' right against the ADOC is both the First and Fourteenth Amendments.[58]

82. In *Coe v. Bell*,[59] a federal district court issued an order providing that counsel for Coe be permitted to witness the execution[60] and "have access to a telephone with an unimpeded outside line at the time that he or she witnesses the execution."[61] The court's order was based on Coe's First and Fourteenth Amendment rights to meaningful access to the courts and his Eighth Amendment right to be free from cruel and unusual punishment.[62] Although the court expressed skepticism "about a

. . . were unable to articulate their complaints to the courts.").

[57] *See Bill Johnson's Restaurants, Inc. v. N.L.R.B.*, 461 U.S. 731, 742 (noting "the First Amendment right of access to the courts"); *see also Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 612 (1972) ("Certainly the right to petition [for redress of grievances] extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition.") (citing, *inter alia*, *Hull*).

[58] *See Grosjean v. American Press Co.*, 297 U.S. 233, 243 (1936) ("[T]he states are precluded from abridging the freedom of speech or of the press by force of the due process clause of the Fourteenth Amendment.").

[59] 89 F.Supp.2d 962 (M.D. Tenn. 2000).

[60] At the time, Tennessee law did not explicitly permit attorneys for condemned inmates to witness their executions.

[61] *Id.* at 967. Tennessee appealed the issuance of the order after Coe was executed. In an unpublished opinion, the Sixth Circuit vacated the order as moot in light of Coe's death. *Coe v. Bell*, 230 F.3d 1357 (6th Cir. 2000).

[62] *Id.*

prisoner's realistic ability to assert and get redress for a violation of his right to be free from cruel and unusual punishment during the execution itself," it reasoned that "the fact that the prisoner's counsel is witnessing the execution with access to a telephone will serve as a deterrence to the remote possibility of a state actor's implementing an execution in a cruel and unusual manner."[63]

83. In granting Coe the relief sought on Eighth Amendment grounds, the court explained, "Plaintiff has an Eighth Amendment right not to be subjected to cruel and unusual punishment, and substantial caselaw [sic] supports the contention that this right attaches until his successful execution," before holding that the rights of meaningful access to the courts and to be free from cruel and unusual punishment "requires that counsel . . . be permitted to witness his execution and have access to a telephone until execution has been successfully carried out."[64]

84. Defendants' policy prohibiting the possession of cell phones or wireless devices[65] as applied to an attorney designated by her client to witness his execution conflicts with Plaintiff's fundamental constitutional rights of meaningful access to the

[63] *Id.* at 966.

[64] *Id.* (citations omitted).

[65] Mr. Brooks' alternative request that a member of his legal team witnessing his execution have access to a land line was not addressed by Defendants.

courts and to be free from cruel and unusual punishment, and that policy must give way to Plaintiff's fundamental constitutional rights.[66]

85. Arizona and Ohio, both of whom make their entire execution protocols public, provide attorney witnesses access to telephones during executions.[67]

**PRAYER FOR RELIEF**

For the above reasons, Plaintiff respectfully requests this Court to:

A. Rule that Alabama's present execution protocol is unconstitutional under *Baze* and *Glossip*;

B. Order Defendants to disclose to Plaintiff and his counsel, without restriction as to its dissemination, the lethal injection protocol that will be used during Plaintiff's execution at least 90 days in advance of such execution;

C. Enter a declaratory judgment that Defendants' choice of midazolam, a drug that will not adequately anesthetize Plaintiff, as part of its three-drug protocol violates Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment;

D. Order the ADOC to submit any proposed changes to its execution protocol to the Court immediately upon making them;

[66] *See Johnson v. Avery*, 393 U.S. 483, 486 (1969) ("[A]dministration of state detention facilities . . . [is] subject to federal authority only where paramount federal constitutional or statutory rights supervene. It is clear, however, that in instances where state regulations applicable to inmates of prison facilities conflict with such rights, the regulations may be invalidated.").

[67] Ex. H at 17; Ex. I at 13.

E. Order that the ADOC disclose to Plaintiff and his counsel information about the drugs that will be used to kill him, including, but not limited to: what they are, when they were purchased, from whom they were purchased, and their National Drug Code identifying number;

F. Enjoin Defendants from executing Plaintiff with inadequate anesthesia and execution procedures that violate his right to be free from cruel and unusual punishment under the Eighth Amendment;

G. Issue an order invalidating Defendants' policy prohibiting the possession of cellular phones as applied to a designated attorney witness to protect Plaintiff's constitutional rights of meaningful access to the courts and to be free from cruel and unusual punishment. Alternatively, Plaintiff asks this Court to order Defendants to provide a land line in the viewing room set aside for Plaintiff's witnesses, to which an attorney witness may have unfettered access during the execution; and

H. Grant any further relief as it deems just and proper.

Respectfully submitted,

Spencer Jay Hahn
Assistant Federal Defender
Federal Defenders, Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Phone: (334) 834-2099
E-mail: Spencer_Hahn@fd.org
OR Bar No. 043027

Counsel for Plaintiff Ronald Bert Smith

## CERTIFICATE OF SERVICE

This complaint was filed on April 15, 2016.

Spencer Jay Hahn
Assistant Federal Defender
Federal Defenders, Middle District of Alabama
817 South Court Street
Montgomery, Alabama 36104
Phone: (334) 834-2099
E-mail: Spencer_Hahn@fd.org
OR Bar No. 043027

Counsel for Plaintiff Ronald Bert Smith